**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
J. Mark Coulson
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
P: (410) 962-4953 | F: (410) 962-2985
mdd_jmcchambers@mdd.uscourts.gov

August 15, 2025

LETTER ORDER AND OPINION TO COUNSEL

RE:   *Mester et al. v. MJC America, Ltd. et al.*
      Civil No. 1:24-cv-01828-JRR

Dear Counsel:

On July 16, 2025, U.S. District Judge Julie R. Rubin of this Court referred this matter to the undersigned for discovery and all related scheduling. (ECF No. 30). On July 22, 2025, in a previous order addressing several discovery disputes, the undersigned requested additional briefing on the permissible scope of two corporate depositions of Defendants pursuant to Federal Rule of Civil Procedure 30(b)(6). (ECF No. 46). On August 8, 2025, the parties submitted their respective positions. (ECF Nos. 50 and 51). The Court finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025).

By way of background, this is a products liability case. Defendants manufacture, distribute and sell dehumidifiers. Plaintiffs allege that one of these dehumidifiers, purchased in 2018, caused a fire at their residence in 2022 because it is defective. The alleged defect concerns a design that failed to meet minimum industry standards regarding the burn and flame rating of certain dehumidifier components. Plaintiffs further allege that Defendants knew that their dehumidifiers did not meet these standards via field reports of fires and information from their customer, General Electric ("GE") (for whom Defendants manufactured dehumidifiers to be sold under the GE brand), but continued to manufacture and sell the allegedly defective dehumidifiers, changing only those sold to GE. Defendants also entered a plea agreement with the Department of Justice acknowledging a failure to timely report these product defects to the Consumer Product Safety Commission and take appropriate remedial action such as a recall. Plaintiffs' complaint includes a claim for punitive damages based on the assertion that Defendants continued to sell dehumidifiers with this known defect, including the dehumidifier at issue in the instant case.

### 1. Objections to the Rule 30(b)(6) Deposition Notice of Defendant Gree USA

The first area of disagreement concerns the 30(b)(6) deposition of Defendant Gree USA, as the topics in the notice all concern discovery regarding Gree USA's financial condition, information relevant to Plaintiffs' punitive damages claim. (ECF No. 50-1 at 3). Defendants argue that punitive damages discovery is premature, and should await further evidence supporting Plaintiffs' punitive damages allegations, as well as Judge Rubin's decision on Plaintiffs' currently-pending Motion for Partial Summary Judgment (ECF No. 34) seeking a ruling that Plaintiffs are, in fact, real parties in interest who would have standing to pursue a punitive damages claim. (ECF No. 51 at 1-2). As to the former, in the previous July 22, 2025 Letter Order and Opinion (ECF No. 46), the undersigned already directed Defendant Gree USA to produce financial documents,

1

rejecting similar arguments about the appropriateness of punitive damages discovery. *Id*. at 2. The undersigned is not alone in this conclusion. *See, e.g., EEOC v. Env't and Demolition Servs., Inc*., 246 F.R.D. 247, 249 (D. Md. 2007) (noting that a majority of courts allow such discovery without a prima facie showing by a plaintiff).[1] As to the latter, while it is true that Judge Rubin might ultimately decide that Plaintiffs do not have standing to bring a punitive damages claim, there is no timetable as to when such a decision might issue. Meanwhile, the discovery clock continues to tick. Accordingly, Defendants' objections are overruled.

### 2. Objections to the Rule 30(b)(6) Deposition Notice to Defendant Gree Zhuhai

Topics 1-8 seek financial information. (ECF No. 50-2 at 3). Defendants' objections include its argument that any punitive damages discovery be deferred, that the topics are "vastly overbroad," "wholly irrelevant" and are "designed primarily to harass, annoy, or embarrass Defendants." (ECF No. 51 at 2-3). These objections are mostly devoid of specifics, other than Defendants contending that Plaintiffs seek information over a 16-year period. *Id.* The Court has already rejected Defendants' objection regarding deferring punitive damages discovery, and has ruled that the information sought is relevant to that claim. The Court also notes that only one of the topics seeks information for a 16-year period, while the others are confined to a five-year period. (ECF No. 50-2 at 3). The Court will, however, narrow some of the topics. First, Topics 3 and 4 seek information regarding Gree USA, and are duplicative of those same topics contained in the 30(b)(6) notice to Gree USA. *Id.* As such, the Court will not require them to be addressed a second time. Additionally, the Court will narrow Topic 8 to the period of 2018 to 2025, which captures financial information relevant to the time the dehumidifier at issue was purchased by Plaintiffs.

Topics 9-13 seek information about dehumidifier recalls "for each dehumidifier manufactured or sold by defendants." *Id.* at 4. Defendants object, noting that the topics seek information regardless of make, model or alleged defect, and date back long before Plaintiffs purchased their dehumidifier in 2018. (ECF No. 51 at 3). Defendants also argue that they hired a third-party to do the recalls and so are not in the possession of potentially responsive information. *Id.* Plaintiffs counter that all of the recalls concern the same defect at issue in this case, and that the topics are critical to trying to support the following allegations:

1. When Defendants issued the recalls in 2013 and 2014, they knew they were selling defective dehumidifiers (because of the information received from GE);

2. After the 2013 and 2014 recalls, Defendants made no real change in the design or manufacture of their products (requiring subsequent recalls);

3. In 2016, the Defendants were told that the specific model of dehumidifier in this case was defective, yet Defendants took no action prior to selling the dehumidifier to Plaintiffs in 2018;

4. Defendants may have recalled the unit at issue after the fire at issue.

---

[1] The Court distinguishes *Bost v. Wexford Health Sources, Inc.*, Civ. No. ELH-15-3278, 2016 WL 11641932 (D. Md. Nov. 9, 2016) in that there were many defendants in that case, making the logistics of such discovery sufficiently complex so as to justify deferring it until after punitive damages allegations survived summary judgment.

(ECF No. 50 at 3).

The Court acknowledges that all of the above areas of inquiry are relevant, and would be proper subjects at a 30(b)(6) deposition, yet the topics as drafted are not sufficiently narrowly tailored to match these issues, other than Topic 13 (which Defendants do not contest). Accordingly, the Court will limit Topics 9-12 to recalls stemming from the same defect as described in the Complaint that allegedly caused the fire at issue in the same or similar models.[2] To the extent that Defendants contend the model at issue is not the same or similar, the deponent should be prepared to specifically address why Defendants contend that it is the case.

Though the Court does not know the extent to which information required to prepare the deponent resides with a third party, the Court will not exempt such information to the extent that such information is nonetheless controlled by Defendants notwithstanding that it may reside with Defendants' third-party vendor.

Topics 14 to 21 concern criminal actions and Consumer Product Safety Commission penalties relating to the recalled products. (ECF No. 50-2 at 4-5). Defendants object, principally arguing that the facts and circumstances surrounding these topics are set forth in the Deferred Prosecution Agreement that Defendants entered into with the Department of Justice (and which they do not dispute), such that any further information Defendants could provide would be nominal and cumulative. (ECF No. 51 at 4). Plaintiffs argue that these issues go towards establishing that the dehumidifier design at issue was defective, and that Defendants continued to sell them even though they knew they were defective. (ECF No. 50 at 4). For the most part, the Court is unconvinced of the Plaintiffs' justifications. The Deferred Prosecution Agreement, which Defendants acknowledge, is more than adequate to address the issue of defect and knowledge. Further, the inquiry risks relitigating the criminal and agency actions, both of which apply their own standards of conduct that do not significantly align with tort liability in a property damage case. That said, the Court will allow inquiry into the issue of whether the Defendants' consultant told Defendants that Plaintiffs' model of dehumidifier was defective in 2016 (the same year as the CPSC fine), and whether Defendants conveyed that information to the CPSC or Department of Justice.

Topics 22-24 concern the changes that GE instructed Defendants to make in 2010 due to a perceived fire hazard caused by the design defect that is also at issue in this case. (ECF No. 50-2 at 5). Defendants resist because the product at issue is not a GE-branded product and therefore they contend the topics are wholly irrelevant. (ECF No. 51 at 4-5). Plaintiffs argue that this information will establish that Defendants were on notice of the design defect at issue as early as 2010, and also that GE provided (and Defendants instituted) a feasible alternative design to eliminate the fire risk, yet chose to implement it only for GE-branded products. (ECF No. 50 at 4-5). That is, GE allegedly identified to Defendants the precise design defect at issue, worked out a remedy for that defect, but Defendants only implemented that remedy for GE-branded products, despite all of their dehumidifiers containing the same or similar design defect. *Id.* The Court

---

[2] To be very clear and avoid confusion later, the Court is using "same or similar" in its broadest sense (i.e., models that allegedly incorporate the same defective design alleged in the present case). Cosmetic differences—or even functional differences between models that nonetheless incorporate the same allegedly defective design would nonetheless render those models "similar." By way of example only, a model that contained a bigger reservoir to collect water but incorporated the same allegedly defective design would be a similar model.

agrees that the topics are relevant, but will limit them to 2010 communications and design changes relating to the alleged design defect at issue.

Topics 25-32 concern the design and testing process. (ECF No. 50-2 at 5-6). Defendants' objections can be summarized as overbreadth and lack of specificity. (ECF No. 51 at 5-7). As to Topics 25-28, the Court partially agrees and will limit those topics to the alleged design defect at issue in this case in the same or similar models. The Court overrules the objections for Topics 29-31, since those topics are already sufficiently tailored, are in part based on materials already produced by Defendants in other similar cases, and are further described on specific pages of an expert report to which Defendants have access as identified in Plaintiffs' 30(b)(6) notice. The Court will limit Topic 32 to changes involving the alleged defect at issue for the same or similar models of dehumidifiers.

Notwithstanding its informal nature, this letter constitutes an order of the Court and should be docketed as such.

Sincerely yours,

/s/

J. Mark Coulson
United States Magistrate Judge